IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN OAKLEAF,

    Plaintiff,[1]

v.                                                              No. 15-cv-0220 RB/SMV

**FNU FRAWNER**
**and FNU IBRAHIM,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS,
ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION, AND GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 33] ("PF&RD"), issued on June 2, 2016. On reference by the Court, [Doc. 3], the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended granting in part and denying in part Defendants' Motion for Summary Judgment [Doc. 32], filed February 16, 2016. [Doc. 33]. Specifically, he recommended that Plaintiff's claim for failure to protect should be dismissed with prejudice, and her claim for deliberate indifference to a serious medical need (i.e., failure to treat) should survive. *Id.* Defendants objected to the portion of the PF&RD that recommended denying summary judgment on the failure-to-treat claim. [Doc. 35]. Plaintiff filed no objection, and the time for doing so has passed. On de novo review of the portions of the PF&RD to which Defendants object, the Court

---

[1] Plaintiff identifies as female and prefers the name Julie Marie Oakleaf. [Doc. 1]. Accordingly, the Court will refer to Plaintiff as "she" or "her."

will overrule the objections, adopt the PF&RD, and grant in part and deny in part Defendants' Motion for Summary Judgment.

## Background

Plaintiff has been incarcerated at Otero County Prison Facility ("OCPF") since July 2013, though she has been incarcerated by the state of New Mexico since at least 2009. [Doc. 29-1] at 2. She explains that she is "psychologically a female [but is] being forced to live as a male while incarcerated at . . . OCPF[.]" *Id.*

A brief detour is in order to define the relevant terms and concepts. The fifth edition of the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders ("DSM V") explains:

> *Gender dysphoria* as a general descriptive term refers to an individual's affective/cognitive discontent with the assigned gender but is more specifically defined when used as a diagnostic category. *Transgender* refers to the broad spectrum of individuals who transiently or persistently identify with a gender different from their natal gender. *Transsexual* denotes an individual who seeks, or has undergone, a social transition from male to female or female to male, which in many, but not all, cases also involves a somatic transition by cross-sex hormone treatment[2] and genital surgery (*sex reassignment surgery*).

AMER. PSYCHIATRIC ASSOC., DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 451 (5th ed. 2013). "Gender dysphoria . . . reflects a change in conceptualization of the disorder[, which was previously referred to as] gender identity disorder." *Id.* at 814–15 (explaining the manual's change from gender identity disorder ("GID") in the fourth edition to Gender Dysphoria in the current, fifth edition).

---

[2] "Cross-sex hormone treatment denotes the use of feminizing hormones in an individual assigned male at birth based on traditional biological indicators or the use of masculinizing hormones in an individual assigned female at birth." AMER. PSYCHIATRIC ASSOC., DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 451 (5th ed. 2013).

2

Returning to the complaint in this case, Plaintiff claims that she has "repeatedly told . . . medical and mental health staff that, without the right treatment, [she is] at great risk of suicide and self-treatment such as self-castration. Plaintiff alleges that she expressed concerns about her safety (due to her transgendered[3] identity) to intake staff when she arrived at OCPF on July 17, 2013. [Doc. 14] at 3. In addition, "[she has] repeatedly told security staff that, because [she is] transgendered, [she is] more likely to be a victim of sexual assault." *Id.* at 2. She complains that "[de]spite [her] concerns, [she was] placed in general population." *Id.* Then, on January 27, 2015, she says that she was the victim of "a sexual assault." *Id.* She says that during the ensuing investigation, she was placed in the "Restrict Housing Unit," but after the investigation, Captain Ochoa (who is not named as a defendant) returned her to general population, despite her objections, and that Defendant Frawner supported the move. *Id.* She says that she was placed in the same "housing unit" as her alleged assailant but in a different "pod." *Id.*

Plaintiff filed her complaint on March 13, 2015. [Doc. 1]. The Court issued a Memorandum Order and Opinion on July 20, 2015, dismissing her claims for release from confinement and ordering her to file an amended complaint identifying the individuals responsible for the alleged violations. [Doc. 13].

Plaintiff filed her amended complaint on July 30, 2015. [Doc. 14]. Plaintiff alleges that Defendants have "denied all treatment for GID, including . . . (1) hormone therapy; (2) a real-life experience of living as a member of the opposite sex; and (3) sex reassignment surgery." *Id.* at 4. In fact, Plaintiff says that Defendant Ibrahim has failed to even evaluate her for GID. *Id.*

---

[3] Apparently, the stylistic usage of the terms "transgendered" and "transgender" is still in flux. *See* BRYAN A. GARNER, MODERN AMERICAN USAGE, 820, (Jeff Newman & Tiger Jackson eds., 3d. ed. 2009). Plaintiff utilizes the term "transgendered" throughout her filings. Judge Vidmar followed her lead, as does the Court.

Finally, she alleges that Defendant Ibrahim has denied her requests for "female undergarments." *Id.* Defendants answered on December 17, 2015. [Doc. 26]. Judge Vidmar ordered Defendants to submit a *Martinez* Report. [Doc. 28]. Defendants filed their Report [Docs. 29, 30, 31] and a Motion for Summary Judgment ("Motion") [Doc. 32] on February 16, 2016. Plaintiff did not respond to the Motion.

Judge Vidmar issued his PF&RD on June 2, 2016. [Doc. 33]. As to the claim for failure to protect, he recommended granting summary judgment in favor of Defendants. Considering the evidence in the light most favorable to Plaintiff, Judge Vidmar found that no reasonable jury could find that Plaintiff faced—or that Defendant Frawner knew of but disregarded—a substantial risk of harm in January of 2015. *Id.* at 6–9. To the extent that the claim for failure to treat could be interpreted as a claim under the Equal Protection clause of the Fourteenth Amendment, Judge Vidmar found that it should fail. *Id.* at 9 n.6 (citing *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015)).

Finally, Judge Vidmar recommended denying summary judgment on the claim for failure to treat as brought under the Eighth Amendment. He found that there was a genuine issue of material fact as to what treatment Plaintiff has been receiving and whether that treatment satisfies the Constitution. *Id.* at 9–16. Following *Brown v. Zavaras*, 63 F.3d 967, 969–70 (10th Cir. 1995), Judge Vidmar found that Defendants had failed to meet their burden as movants to show that (based on the undisputed facts or the facts as seen in the light most favorable to Plaintiff) they were entitled to judgment as a matter of law.

**Standard of Review for Objections
to Magistrate Judge's PF&RD**

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which is objection is made." 28 U.S.C. § 636(b)(1). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

**Summary Judgment Standard**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must support its request by "citing to particular parts of materials in the record, including depositions, documents,  electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The movant has the initial burden of establishing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992).  Although all facts are construed in favor of the non-movant, she still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an

5

element essential to her case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

A pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

In a suit brought by a pro se prisoner, a court may order the defendants to investigate the plaintiff's claims and submit a report of that investigation, called a *Martinez* Report. *See Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991); *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978). A court may use the *Martinez* Report to grant summary judgment upon motion of the defendants. *Hall*, 935 F.2d at 1009–13; *see also Celotex*, 477 U.S. at 326 (courts possess the authority to enter summary judgment sua sponte, so long as the losing party is on notice that she must come forward with all her evidence).

### Standard of Claims for Deliberate Indifference to Serious Medical Needs

"A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety." *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (internal quotation marks omitted). An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective component, "[t]he prisoner must first produce evidence that the deprivation

at issue was in fact sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). That is, the plaintiff's medical condition must have been diagnosed by a physician as mandating treatment, or be so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (internal quotation marks omitted). "A complaint about an inadvertent failure to provide adequate medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (internal quotation marks omitted).

The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (brackets and internal quotation marks omitted). "To prevail on the subjective component, the prisoner must show that the defendant[] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted). The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]" *Mata*, 427 F.3d at 753.

In the context of treatment for transgendered inmates, there are two controlling published cases, *Supre* and *Brown*, and two persuasive unpublished cases, *Qz'Etax* and *Druley*.  In 1986, the Tenth Circuit was one of the first circuit courts to address whether transgendered inmates were constitutionally entitled to cross-sex hormone treatment.  *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).  The court held that after Ms. Supre's repeated attempts at self-mutilation and, ultimately, her self-castration, "some form of therapy was necessary."  *Id.* at 962–63.  However, the court was clear that the Constitution did not mandate any precise form of treatment.  Ms. Supre wanted estrogen treatment, and some physicians agreed with her.  *Id.*  However, other physicians recommended testosterone replacement.  *Id.* at 963.  The Department of Corrections ultimately denied estrogen and, instead, offered testosterone.  *Id.*  The court held that the Department of Corrections had made "an informed judgment as to the appropriate form of treatment and did not deliberately ignore [Ms. Supre's] medical needs."  *Id.*

In 1995, the Tenth Circuit again addressed whether a prison facility had unconstitutionally denied medical treatment to an inmate for his transgender condition.  *Brown*, 63 F.3d 967.  Mr. Brown, a "transsexual" inmate (who identified himself with masculine pronouns) alleged that the defendants had violated his Eighth Amendment right by their "total failure . . . to provide any kind of medical attention to the plaintiff *for his transsexual condition*."  *Id.* at 969–70 (emphasis added).  The court noted that Mr. Brown had not alleged that he had received cross-sex hormone treatment prior to his incarceration.  *Id.* at 970 n.2.  The court remanded the case "to properly determine whether Mr. Brown [was] being offered medical care consistent with *Supre*."  *Id.* at 970.

In 2006, the Tenth Circuit affirmed the dismissal of an action filed by a transgendered inmate in Colorado who challenged the Department of Corrections policy on treatment for GID. *Qz'Etax v. Ortiz*, 170 F. App'x 551, 552 (10th Cir. 2006). The policy was not described in the order, but it was noted that the plaintiff had been receiving some form of treatment for her transgender condition while incarcerated. *Id.* at 553. The district court had found that GID "is an objectively serious medical condition," but the plaintiff had failed to explain how the prison's policy evidenced deliberate indifference to that condition. *Id.* The Tenth Circuit upheld the dismissal of the action. *Id.*

In 2015, the Tenth Circuit reviewed a district court's denial of a preliminary injunction where a transgendered inmate alleged the defendant employees of the Oklahoma Department of Corrections had violated the inmate's Eighth Amendment right when they attempted to provide treatment for her transgender condition that the plaintiff disagreed with. *Druley v. Patton*, 601 F. App'x 632 (10th Cir. 2015). Prior to her incarceration, Ms. Druley had been diagnosed with GID and had undergone two of three gender reassignment surgeries to change her body from male to female. *Id.* at 633. During her incarceration, Ms. Druley claimed that the defendants had violated the Eighth Amendment by, among other things, stopping and starting her prescribed estrogen hormone medications and by giving her inadequately low doses of hormones. *Id.* The court held that there was no evidence that the defendants had failed to make an informed judgment as to the hormone treatment level appropriate for her, or otherwise deliberately ignored her serious medical needs. *Id.* at 635.

Although the contours of this area of law have not been clearly defined, two boundaries are clear. On the one hand, the Constitution does not guarantee a transgendered inmate any

9

particular course of treatment for her transgender condition. *Supre*, 792 F.2d at 963. And where prison officials have made an informed judgment about the treatment offered, an inmate's disagreement with that judgment does not violate the Constitution. *Id.*; *see Druley*, 601 F. App'x at 635. On the other hand, however, prison officials may not entirely ignore the medical needs of transgendered inmates, refusing any treatment at all for an inmate's transgender condition. *Brown*, 63 F.3d at 970.

## **Analysis**

Defendants object to Judge Vidmar's recommendation to deny summary judgment on the failure-to-treat claim insofar as it is brought under the Eighth Amendment.[4] [Doc. 35]. They argue that they are entitled to summary judgment. They argue, first, that Plaintiff has not alleged a sufficiently serious medical harm, thereby failing to meet the objective component of the test for deliberate indifference. Next, they argue that even if Plaintiff had met the objective component, she has not met the subjective component. Specifically, they argue that the psychiatric treatment, which Plaintiff is undisputedly receiving, satisfies their duty to treat her transgender condition. Further, implicit in their argument is that no reasonable jury could conclude otherwise. On this point, the Court disagrees. Although a jury ultimately may agree with Defendants, it is not a foregone conclusion. A reasonable jury could look at this record and agree with Plaintiff that Defendants have refused her any treatment for her transgender condition.

---

[4] No party has objected to Judge Vidmar's recommendations to grant summary judgment in Defendants' favor on Plaintiff's failure-to-protect claim or on her failure-to-treat claim insofar as it may be asserted under the Equal Protection clause. Accordingly, the Court will adopt these findings and recommendations.

<u>The Court overrules Defendants' objections regarding the objective component.</u>

Defendants argue first that Plaintiff fails to meet her burden to show that she is at risk of suffering a substantially serious harm and has therefore failed to meet the objective component. [Doc. 35] at 4–5. They disagree with Judge Vidmar's finding that her allegation that she is transgendered, with nothing more, could potentially meet the objective component. *Id.*

The Court is not persuaded by Defendants' position for several reasons. First, Defendants' argument that Plaintiff's allegations fail to meet the objective component is raised for the first time in their objections. *Compare* [Doc. 32] at 11–12 (Defendants' Motion for Summary Judgment), *with* [Doc. 35] at 4–5 (Defendants' objections). They did not raise it before Judge Vidmar.[5] *Id.* Thus, the argument is waived. *See Garfinkle*, 261 F.3d at 1030–31 ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived.").

Second, even if it were not waived, it would not be persuasive. Here, on a motion for summary judgment, Defendants—as movants—have the initial burden of showing that there is no genuine dispute as to any material fact. Certainly at trial, Plaintiff would bear the burdens of proof and persuasion, but here at the summary judgment stage, *Defendants* must show that, based on the facts seen in the light most favorable to Plaintiff, they are entitled to judgment as a

---

[5] Before Judge Vidmar, Defendants argued only that Plaintiff was not constitutionally entitled to cross-sex hormone treatment. [Doc. 32] at 11–12. They did not address Plaintiff's claim that they had denied her any treatment at all for her transgender condition. *See id.* Plaintiff has specified that she would like cross-sex hormone treatment, as well as "a real-life experience of living as a member of the opposite sex[,] sex reassignment surgery[, and] female undergarments." [Doc. 14] at 4. The Court agrees with Defendants that Plaintiff is not necessarily constitutionally entitled to cross-sex hormone treatment, or any of the other specific treatments that she requests. *See Supre*, 792 F.2d at 963 ("We also are unable to conclude that federal law requires prison officials to administer female hormones to a transsexual prisoner[, but] some form of therapy was necessary after plaintiff's castration[.]"); *Brown*, 63 F.3d at 970 (explaining that, under *Supre*, "although prison officials must provide treatment to meet the medical needs of transsexual prisoners, the law did not require prison officials to administer estrogen or provide any other particular treatment."). However, as discussed further herein, *Brown* appears to require that Plaintiff be offered some type of treatment for her transgender condition.

matter of law.  Defendants can make this showing by pointing out an absence of evidence to support some essential element of Plaintiff's case, or by producing affidavits or other evidence themselves.  *See Celotex*, 477 U.S. at 325.

On de novo review, the Court agrees with Judge Vidmar that Defendants do not meet this burden as to the objective component.  Defendants cite no case—and the Court can find none—holding (or even suggesting) that a plaintiff's declaration that she is transgendered is insufficient to satisfy the objective component.[6]  More importantly, though, *Brown* certainly suggests that, in fact, it may be enough to meet the objective component.  The Court must clarify Judge Vidmar's finding and its own ruling today.  The Court does not hold that declaring oneself to be transgendered will always satisfy the objective component.  That is not the holding.  Rather, the holding is somewhat more nuanced.  The Court holds that a declaration of being transgendered could meet the objective component.  In this case Defendants have not met their summary judgment burden of pointing out an absence of evidence to support this essential element of Plaintiff's case.

---

[6] *See Supre*, 792 F.2d at 963 (holding that the objective component was met where the plaintiff had castrated herself, and thus, "some form of therapy was necessary"); *Brown*, 63 F.3d at 969–70 (remanding to district court to determine whether the defendants were offering the plaintiff medical care consistent with *Supre* after the plaintiff alleged that the defendants had denied him "any kind of medical attention . . . *for his transsexual condition*") (emphasis added); *Qz'Etax*, 170 F. App'x at 553 (affirming the district court's finding that the plaintiff had "sufficiently stated in her Complaint that gender identity disorder is an objectively serious medical condition"); *Druley*, 601 F. App'x at 635 (making no express finding on the objective component, but finding that the plaintiff failed to show a likelihood of success on the merits where she failed on the subjective component); *Rodgers v. Sinker*, No. 15-cv-0174 CMA-NYW, 2015 U.S. Dist. LEXIS 103257, at *6–7 (D. Colo. Aug. 4, 2015) (unpublished) (following *Brown*, to find in relevant part that the plaintiff's complaint "stating her need for Gender Dysphoria treatment, which has gone entirely unmet" was meritorious enough to appoint pro bono counsel); *Collins v. Correct Care Solutions*, No. 11-3151-SAC, 2013 U.S. Dist. LEXIS 79360, at *12 (D. Kan. June 6, 2013) (unpublished) (assuming without finding that the "plaintiff's gender dysphoria constitutes a serious medical condition satisfying the objective component of an Eighth Amendment claim," but finding that the plaintiff failed to allege facts that, if true, would satisfy the subjective component); *Griffith v. Meyer*, No. 11-cv-3078 RM-BNB, 2013 U.S. Dist. LEXIS 188114, at *10–11 (D. Colo. May 22, 2013) (unpublished) (making no express finding on the objective component but finding that the plaintiff failed to meet the subjective component where she had been receiving some sort of cross-sex hormone treatment during the entirely of her incarceration).

Defendants argue that *Druley* and *Brown* require a different result. *See* [Doc. 35] at 4–5. The Court is not persuaded for several reasons. First, neither *Druley* nor any other case that the Court has reviewed explicitly (or implicitly) required anything more than a declaration of being transgendered to meet the objective component. *See* n.6, *infra*. Defendants have presented no case from any jurisdiction brought by a transgendered inmate where the objective component was not met.[7] [Doc. 35] at 4–11. The Court has searched in vain for such a case. The Court has attempted to find every case in the Tenth Circuit and in the district courts of the Tenth Circuit addressing failure-to-treat claims brought by transgendered inmates. *See* n.6, *infra*. Among all of those cases, the Court has found none—zero—in which the objective component was not met. *Id.* Defendants are incorrect when they argue that the *Druley* court (either the district court or the circuit court) found that the plaintiff did not meet the objective component. *See* [Doc. 35] at 4–5. Rather, the courts found that the plaintiff failed to show "a likelihood that [she would] suffer irreparable harm in the absence of a preliminary injunction." *Druley*, 601 F. App'x at 634 (quoting the standard), 635 (findings of district and circuit courts on that issue). There was no explicit finding one way or the other as to the objective component. *Id.* at 635. Like many other similar cases, the court in *Druley* found that the plaintiff failed on the subjective component. *See* n.6, *infra*.

Second, the Court is not persuaded that *Brown* is distinguishable from the instant case. Defendants argue that:

> the objective component . . . was met in *Brown*, not because of the plaintiff's identification as transsexual, but because he claimed a

---

[7] Defendants cite to *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1218 (10th cir. 2007) for the proposition that "the majority of cases" cited in Judge Vidmar's PF&RD involved individuals who were diagnosed with and receiving treatment for GID prior to their incarcerations. [Doc. 35] at 7. However, *Etsitty* does not involve an incarcerated person at all; *Etsitty* is an employment discrimination case. 502 F.3d at 1218.

> general right to medical treatment but he was not offered medical treatment of any kind. The allegation of complete deprivation of medical care, not simply Plaintiff's transgender identification, satisfied the objective component[.]

[Doc. 35] at 4. This is a conflation of the objective and subjective components. In *Brown*, the objective component appeared to be satisfied by nothing more than the plaintiff "stat[ing] that he is transsexual," 63 F.3d at 969, especially because he had "not allege[d] that he had received hormone treatment . . . prior to his incarceration," *id.* at 970 n.2. (Brown's allegation that the defendants failed to offer any treatment at all for his transgender condition went to the subjective component. *Id.* at 969.) Here, as in *Brown*, Plaintiff claims that she is transgendered and needs treatment for that condition.[8]

It is undisputed here that Plaintiff has never been diagnosed with GID or Gender Dysphoria and that Plaintiff has never been prescribed cross-sex hormone treatment or any of the other GID-specific treatments she requests. It appears undisputed that Plaintiff did not identify herself as transgendered to prison officials prior to 2012 (when she was already incarcerated but at a different facility than OCPF). However, Plaintiff has been consistent in her requests for GID treatment and in her self-identification as transgendered since 2012. Although Plaintiff urges that, as a transgendered individual, she is at greater risk for self-mutilation and suicide, it is undisputed that she has never threatened self-harm or reported suicidal ideation while at OCPF. *See* [Doc. 30-16] at 8−9 (000270–271); [Doc. 30-16] at 18 (000280); [Doc. 30-16] at 24 (000286); [Doc. 30-16] at 33–34 (000295–296); [Doc. 30-17] at 3 (000305); [Doc. 30-17]

---

[8] Contrary to the implication in Defendants' argument, *Brown* was not about an allegation that the defendants had denied him all medical treatment of any kind for *any* medical condition. *See* [Doc. 35] at 4. It was not as if Brown identified as transgender but also claimed that the defendants refused medical treatment for his high blood pressure and broken arm. *See Brown*, 63 F.3d at 969–70. Expressly, *Brown* was about an allegation that the defendants had denied him all medical treatment *for his transgender condition*. 63 F.3d at 969–70.

14

at 28−29 (000330−000331); [Doc. 30-18] at 37–38 (000379–000380); [Doc. 30-19] at 10–11 (000392−000393); [Doc. 30-19] at 25–26 (000407−000408); [Doc. 30-20] at 15–16 (000437−000438); [Doc. 30-21] at 2 (000464); [Doc. 30-21] at 22 (000484).

The Court is unwilling to say that that the facts of this case cannot satisfy the objective component as a matter of law. The Court does not read Judge Vidmar's PF&RD to say—nor does the Court say today—that the objective component is satisfied by nothing more than a declaration that one is transgendered. Instead, on this particular Motion for Summary Judgment, and on the facts of this case viewed in the light most favorable to Plaintiff, the Court finds that Defendants have failed to show that Plaintiff's declarations are insufficient, i.e., that she cannot meet the objective component. The Court is bound by *Brown*. Defendants' objections as to the objective component are overruled.

<u>The Court overrules Defendants' objections regarding the subjective component.</u>

The Court has meticulously reviewed the records cited by Defendants in support of their argument that Plaintiff's mental health treatment constitutes treatment for her transgender condition. *See* [Doc. 35] at 9 n.3 (citing [Docs. 30-16 through 30-20] (documents Bates-stamped Oakleaf, J. 000267, 270–272, 278, 280, 286, 295–296, 305, 327–328, 330–331, 341, 347, 370−373, 379–380, 392–393, 407–408, 437–438, 464, 484)). Although the records could be interpreted that way, they are not conclusive. A reasonable jury could also interpret these records as supporting Plaintiff's position that Defendants, in fact, have not treated her transgender condition at all.

The records cited by Defendants evidence several "sick call" request forms submitted by Plaintiff between July 18, 2013, and March 11, 2014. [Doc. 30-16] at 5, 8–10 (000267, 000278);

[Doc. 30-17] at 25–26 (000327–328); [Doc. 30-18] at 5, 28 (000347, 000370). Some of the "sick calls" request appointments with a mental health provider for the purpose of addressing Plaintiff's transgender condition, [Doc. 30-16] at 16 (000278); [Doc. 30-18] at 5 (000347), Other forms request assistance for other issues, such as bipolar disorder or prescription glasses, [Doc. 30-16] at 5 (000267), [Doc. 30-17] at 25–26 (000327–328); [Doc. 30-18] at 28 (000370). It appears that a social worker named Ms. Royer promptly followed up on each of these "sick calls." [Doc. 30-16] at 5, 8–10, 16, 24 (000267, 000270–272, 000278, 000286); [Doc. 30-17] at 3, 25−26, 39 (000305, 000327–328, 000341); [Doc. 30-18] at 5, 28 (000347, 000370). It also appears that Ms. Royer developed Plaintiff's mental health treatment plan on July 23, 2013. [Doc. 30-16] at 9 (000271). The treatment plan, however, does not mention GID or Plaintiff's transgender issues in any way. *Id.*

Between August 8, 2013, and April 28, 2015, the records cited by Defendants also reflect seven appointments with a psychiatric nurse practitioner, Patrice LaLonde; one appointment with a psychiatrist, Michael Laughter, MD; and two appointments with providers whose names are illegible. [Doc. 30-16] at 18, 33–34 (000280, 000295–296); [Doc. 30-17] at 28–29 (000330−331); [Doc. 30-18] at 29–31, 37–38 (000371–373, 000379–380); [Doc. 30-19] at 10−11, 25–26 (000392–393, 000407–408); [Doc. 30-20] at 15–16 (000437–438); [Doc. 30-21] at 2, 22 (000464, 000484). These notes primarily reflect medication management, but some of them also reference Plaintiff's requests for a diagnosis of GID and corresponding treatment. Dr. Laughter and Nurse Practitioner LaLonde explain in their notes that Plaintiff cannot be diagnosed with GID until she has undergone "several years of counseling." [Doc. 30-16] at 33−34 (000295–296); [Doc. 30-17] at 28–29 (000330–331). In one of LaLonde's notes, she

explains that Plaintiff is not eligible for counseling until she is closer to her release date but offers 10- to 15-minute appointments with a counselor on an "emergent basis." [Doc. 30-17] at 28 (000330).  LaLonde further explains that Plaintiff is not eligible for a diagnosis of GID until "partial androgen insensitivity disorder" and "congenital adrenal hyperplasia" are ruled out. *Id.*  However, LaLonde indicates that these cannot be ruled out while Plaintiff is incarcerated. *Id.*  Dr. Laughter's and Nurse Practitioner LaLonde's notes also explain that Plaintiff is not a candidate for cross-sex hormone treatment (i.e., estrogen) because she has a history of stroke. [Doc. 30-16] at 33–34 (000295–296); [Doc. 30-17] at 28–29 (000330–331).  Finally, Defendants cite to the affidavit of Chris Pascale, Health Services Administrator.  [Doc. 35] at 9 n.3 (citing [Doc. 29-1] at 3).  Administrator Pascale very briefly summarizes Plaintiff's medical records and concludes that "[a]lthough [she] has not been diagnosed with GID, [she] continues to receive psychiatric care during her incarceration at OCPF."  [Doc. 29-1] at 3.  Defendants' position is that these records establish that Defendants have not been deliberately indifferent to Plaintiff's transgender condition.  [Doc. 35] at 9.

     Defendants' position is that the undisputed facts establish that Plaintiff has been receiving psychiatric treatment.  Defendants argue that this psychiatric treatment amounts to treatment *for Plaintiff's transgender condition*.  Based on the premise that they are providing treatment *for Plaintiff's transgender condition*, Defendants, understandably, conclude that there is no evidence that they have been deliberately indifferent to Plaintiff's treatment needs.  [Doc. 35] at 8–9.  After all, if they are treating her transgender condition, they cannot be deliberately indifferent to it.  Moreover, they correctly point out that a difference of opinion about the proper diagnosis or course of treatment does not state a claim for violation of the Constitution.

17

Certainly, there is evidence in the record that a reasonable jury could rely on to agree with Defendants. *See* [Doc. 30-16 through 30-21] (documents Bates-stamped Oakleaf, J. 000267, 270–272, 278, 280, 286, 295–296, 305, 327–328, 330–331, 341, 347, 370–373, 379–380, 392−393, 407–408, 437–438, 464, 484).

The problem is that there is also evidence on which a reasonable jury could agree with Plaintiff. That is, there is evidence in the record that could support the conclusion that Defendants have entirely refused to evaluate Plaintiff for GID or to treat *her transgender condition*. For example, in Plaintiff's verified complaint,[9] she avers that Defendants have "denied all treatment for GID" and have even refused to evaluate her for the disorder. [Doc. 14] at 3–4. Similarly, a September 11, 2013 memo from Health Services Administrator Pascale advises that Plaintiff "arrived to OCPF . . . as a male[,] and during his stay at this facility, will remain as such. Your request for a written statement regarding your diagnosis [of GID] will not be given while at this facility." [Doc. 30-16] at 312 (000294). There is also a note from Plaintiff in her chart (stamped received on October 8, 2013) complaining that she is not receiving counseling. [Doc. 30-16] at 40 (000302). Nurse Practitioner LaLonde's November 25, 2013 note could be read as supporting Plaintiff's allegation that Defendants refuse even to evaluate Plaintiff for GID, much less treat her for it. [Doc. 30-17] at 28 (000330). LaLonde's note indicates that Plaintiff would not be eligible for a GID diagnosis until she has completed several years of counseling but then indicates that Plaintiff is not eligible for counseling until she is within three years of her release date. *Id.* LaLonde also indicates that certain other conditions

---

[9] Because Plaintiff's complaint is verified, the Court treats it as an affidavit under Fed. R. Civ. P. 56(c)(4). *See Hall*, 935 F.2d at 1111 (a plaintiff's complaint is treated like an affidavit so long as it "alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury.").

would need to be ruled out before a GID diagnosis could be considered, but those conditions cannot be ruled out while Plaintiff is incarcerated. *Id.* On January 21, 2014, Ms. Royer, the social worker, responded to Plaintiff's "sick call" request to speak to "mental health" about her "transgender situation," by telling her that nothing had changed since they met on December 23, 2013,[10] and that if Plaintiff wished to discuss "any medication issues or mental health symptoms," she should complete another "sick call" request. [Doc. 30-18] at 5 (000347). Royer's note could be seen as implying that Plaintiff's transgender condition is neither a "medication issue" nor a "mental health symptom." A reasonable jury could rely on these records to find that Defendants have given Plaintiff the runaround about treatment for her transgender condition. A reasonable jury could look at this evidence and find that Defendants have refused any and all treatment for Plaintiff's transgender condition and have even refused to evaluate her for GID.

The Court agrees with Defendants that it is undisputed that Plaintiff has been receiving some psychiatric treatment. However, it is disputed that such treatment is *for her transgender condition*. Defendants do not address this evidence or this dispute in any way. They ignore it entirely. Their position presumes that the general psychiatric treatment provided is itself treatment for Plaintiff's transgender condition and, further, that the evidence is not susceptible to any other interpretation. The Court is not persuaded. On de novo review, the Court agrees with Judge Vidmar that there is a genuine dispute about whether the mental health treatment, which

---

[10] On December 23, 2013, Ms. Royer noted "[Plaintiff] brought paperwork from USDOJ regarding [her] right to be evaluated for transgender status & surgery. [She] states [she] wanted this information given to telepsych. [She] states she needs to be able to talk to someone more in[-]depth about this issue. [She] states [she] has had no physical changes or any kind of therapies." Ms. Royer noted in the "plan" section of the note that she would "continue [with] plan; [Plaintiff] has [follow-up appointment] scheduled [with] provider; will inform supr [sic] of [Plaintiff's request] for more in[-]depth discussion." [Doc. 30-17] at 39 (000341).

Plaintiff has undisputedly been receiving, amounts to treatment *for her transgender condition* or otherwise satisfies the Constitution.

### Conclusion

There is evidence to support Plaintiff's position. Judge Vidmar determined that Defendants had failed to show that this evidence could not sustain Plaintiff's claim at trial. A jury could agree that the treatment Defendants are providing satisfies the Constitution. Such a result would not be surprising. However, summary judgment is not a prediction of who might win at trial. Summary judgment weeds out those claims that cannot win at trial. Defendants fail to meet their burden as movants to show that Plaintiff cannot win at trial. There is evidence that could support her claim. She is entitled to present it to a jury.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Objections to Magistrate Judge's Proposed Findings and Recommended Disposition to Grant in Part and Deny in Part Defendants' Motion for Summary Judgment [Doc. 35] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 33] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. 32] be **GRANTED in part and DENIED in part**. Plaintiff's claim for failure to protect is **DISMISSED with prejudice**, and her Eighth Amendment claim for deliberate indifference to a serious medical need survives.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**United States District Judge**

Plaintiff has undisputedly been receiving, amounts to treatment *for her transgender condition* or otherwise satisfies the Constitution.

### Conclusion

There is evidence to support Plaintiff's position. Judge Vidmar determined that Defendants had failed to show that this evidence could not sustain Plaintiff's claim at trial. A jury could agree that the treatment Defendants are providing satisfies the Constitution. Such a result would not be surprising. However, summary judgment is not a prediction of who might win at trial. Summary judgment weeds out those claims that cannot win at trial. Defendants fail to meet their burden as movants to show that Plaintiff cannot win at trial. There is evidence that could support her claim. She is entitled to present it to a jury.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Objections to Magistrate Judge's Proposed Findings and Recommended Disposition to Grant in Part and Deny in Part Defendants' Motion for Summary Judgment [Doc. 35] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 33] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. 32] be **GRANTED in part and DENIED in part**. Plaintiff's claim for failure to protect is **DISMISSED with prejudice**, and her Eighth Amendment claim for deliberate indifference to a serious medical need survives.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**United States District Judge**